New York Mun. Power Agency v Town of Massena (2021 NY Slip Op 04268)





New York Mun. Power Agency v Town of Massena


2021 NY Slip Op 04268


Decided on July 8, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:July 8, 2021

531465

[*1]New York Municipal Power Agency, Appellant-Respondent,
v
Town of Massena et al., Respondents-Appellants, et al., Defendants.

Calendar Date:June 2, 2021

Before: Lynch, J.P., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.


Costello, Cooney & Fearon, PLLC, Syracuse (Matthew W. O'Neil of counsel), for appellant-respondent.
Hancock Estabrook, LLP, Syracuse (Janet D. Callahan of counsel), for respondents-appellants.


Lynch, J.P.
Cross appeals from an order of the Supreme Court (Farley, J.), entered April 22, 2020 in St. Lawrence County, which partially denied plaintiff's motion to dismiss certain counterclaims.
This case comes before us for a second time (188 AD3d 1517 [2020]). As explained in our prior decision, plaintiff is a joint action agency established in 1996 pursuant to General Municipal Law § 119-o for the purpose of supplying electric power to its municipal members. This action was triggered when defendant Town of Massena (hereinafter the Town), acting through defendants Massena Electric Department and defendant Massena Electric Utility Board, issued a notice in November 2018 advising plaintiff that it was withdrawing from the agency, effective December 23, 2018, pursuant to the 1996 membership agreement (hereinafter the agreement). Maintaining that the effective withdrawal date was December 31, 2020 under the agency bylaws, plaintiff commenced this action against, among others, the Town, the Massena Electric Department, the Massena Electric Utility Board and defendant Andrew J. McMahon, the president of plaintiff's board of directors from January 2018 to November 2018 (hereinafter collectively referred to as defendants), seeking an injunction and monetary relief for breach of contract. We previously upheld the denial of plaintiff's injunction request and defendants' motion to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), finding that plaintiff stated a viable breach of contract claim given "that the terms of the underlying documents are in conflict" (188 AD3d at 1518).
This appeal centers on defendants' third and fourth counterclaims, in which they seek to recover a pro rata share of plaintiff's assets in the amount of $2,977,779. In their third counterclaim, defendants maintain that plaintiff is statutorily required to refund the moneys claimed pursuant to General Municipal Law § 119-o. The fourth counterclaim seeks to recover the funds under a theory of unjust enrichment. Supreme Court granted plaintiff's motion to dismiss the third counterclaim, but denied the motion as it pertained to the fourth counterclaim given the uncertainty, at this juncture, as to whether the agreement and bylaws contemplate a distribution of assets to a withdrawing member. These cross appeals ensued.
To begin, we address the contention first raised in plaintiff's reply brief that defendants' cross appeal should be deemed abandoned due to their failure to perfect within six months of the date of their notice of cross appeal. The contention gives us an opportunity to address the new rules governing cross appeals under the Practice Rules of the Appellate Division that went into effect on September 17, 2018 (22 NYCRR part 1250). Generally, an appellant must perfect its appeal within six months of the date of the notice of appeal or the appeal will be deemed dismissed (see Rules of App Div, All Depts [22 NYCRR] § 1250.9 [a]; 1250.10 [a]). Either by stipulation [*2]between the parties or upon letter request, an appellant may extend this time period up to 60 days and, by letter application, by an additional 30 days (see Rules of App Div, All Depts [22 NYCRR] § 1250.9 [b]). Any further extension would require Court approval. Here, plaintiff filed a notice of appeal on May 29, 2020 and secured a 60-day extension, requiring perfection of the appeal by January 28, 2021. Plaintiff timely filed its brief on the last day. Defendants filed their answering brief on February 26, 2021, i.e., within 30 days of the filing of plaintiff's brief as required under Rules of the Appellant Division, All Depts (22 NYCRR) § 1250.9 (f) (i) (iv), which specifies that a respondent-appellant's brief "shall include the points of argument on the cross appeal." We understand that defendants have relied upon the specific directive set forth in Rules of the Appellate Division, All Depts (22 NYCRR) § 1250.9 (f) (i) (iv), but that reliance presumes that defendants had obtained the status of a respondent-appellant.
The nuance here is that the new practice rules pertaining to cross appeals specify that "[t]he party that first perfects the appeal shall be denominated the appellant-respondent" (Rules of App Div, All Depts [22 NYCRR] § 1250.9 [f] [1] [iii]). Until such time as either party has perfected, the identity of a party as either an appellant-respondent or a respondent-appellant remains to be determined. Having filed a notice of cross appeal on June 2, 2020, defendants had until December 2, 2020 to perfect their appeal or otherwise seek an extension. Defendants failed to do either. For this reason, plaintiff maintains that the cross appeal was effectively abandoned and technically plaintiff is correct. The rules, read as a whole, require each party to preserve its position until such time as one of the parties actually perfects its appeal. That said, the rules require the parties to "consult and make best efforts to stipulate to a briefing schedule" (Rules of App Div, All Depts [22 NYCRR] § 1250.9 [f] [1] [i]), and there is no indication in this record or the briefs that such consultation occurred here. In any event, since this is our first decision addressing implementation of the new practice rules relating to cross appeals, we opt to waive defendants' noncompliance and deem the cross appeal properly before us (see Rules of App Div, All Depts [22 NYCRR] § 1250.1 [g]).
Turning to the merits, we agree with Supreme Court that the third counterclaim does not state a viable cause of action. Both parties recognize that neither the agreement nor the bylaws expressly address the right of a withdrawing member to a distribution. Recognizing as much, defendants maintain that the governing statute requires the distribution. We are unpersuaded. As relevant here, General Municipal Law § 119-o (2) (a) provides that "[a]n agreement may contain provisions relating to . . . [a] method or formula for equitably allocating and financing the [*3]capital and operating costs" of the agency (emphasis added). The term "may" is permissive not mandatory. Correspondingly, we do not read General Municipal Law § 119-o (2) (l), which specifies that an agreement may authorize an agency to address "[o]ther matters as are reasonably necessary and proper to effectuate and progress the joint service," as requiring a distribution upon a member's withdrawal.
Turning to the fourth counterclaim, the agreement addresses both member withdrawal and termination. Article III section 4 of the agreement allows for withdrawal upon two specified conditions — the presentation of a withdrawal resolution adopted by the member's local governing body and the payment of a pro rata share of any outstanding financial obligation of the agency. More particularly, article X section 1 of the agreement allows a member, which voted against a proposed annual operating budget "and which does not wish to be assessed," to withdraw within 60 days of the date the budget was adopted. Here, defendants voted against the annual budget presented on October 24, 2018 and invoked both of the recited provisions in a withdrawal notice issued on November 26, 2018. Once the conditions are satisfied, the withdrawing municipality ceases to be a member, but no mention is made of any right to a distribution. By comparison, article XIII provides that, upon a termination of the agreement by a two-thirds vote of the membership, plaintiff's board of directors is required to directly "liquidate the business . . . and distribute the net proceeds to the [m]embers" on a pro rata basis. The dichotomy is that the agreement speaks to a distribution of net assets upon termination but not to an equitable share of assets upon the withdrawal of a member. Further complicating matters is the question of whether a member that previously withdrew would be included in the distribution upon a termination of the agency.
Generally, a "written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter. A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed to prevent a party's unjust enrichment" (Clark-Fitzpatrick, Inc. v Long Is. RR Co., 70 NY2d 382, 388 [1987] [citations omitted]). The operative question is whether the agreement clearly covered the dispute between the parties. Plaintiff would answer that question in the affirmative, reasoning that the agreement made no provision for a distribution to a withdrawing member by design, thereby precluding an unjust enrichment claim. Defendants maintain that since distribution was not addressed, a valid claim for unjust enrichment has been made. Given that we apply a liberal standard on a motion to dismiss (188 AD3d at 1518-1520), we agree with Supreme Court that it is premature to resolve the disputed issue.
Clark, Aarons, Reynolds Fitzgerald [*4]and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.