Integrity Intl., Inc. v HP, Inc. (2022 NY Slip Op 06969)

Integrity Intl., Inc. v HP, Inc.

2022 NY Slip Op 06969

Decided on December 8, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 8, 2022

532968
[*1]Integrity International, Inc., Doing Business as Tarrenpoint, Appellant- Respondent,
v
HP, Inc., et al., Respondents-Appellants.

Calendar Date:October 12, 2022

Before:Lynch, J.P., Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ.

Fairchild Law, LLC, New York City (Steven R. Fairchild of counsel), for appellant-respondent.
Woods Oviatt Gilman LLP, Rochester (F. Michael Ostrander of counsel), for respondents-appellants.

Lynch, J.P.
Cross appeals from an order of the Supreme Court (Denise A. Hartman, J.), entered February 8, 2021 in Albany County, which partially granted defendants' motion for partial summary judgment dismissing certain causes of action.
Plaintiff, a corporation with its principal place of business in Texas, provided services to defendants and their predecessor, Compaq Computer Corporation, pursuant to written service contracts from 1994 to 2016. This matter pertains to two of those agreements between the parties: the Standard Service Agreement (hereinafter SSA), effective May 2011, and the Master Standard Service Agreement (hereinafter MSSA), effective July 2014, which superseded the SSA. Although the particulars differed, both agreements required defendants to make periodic payments to plaintiff for its services. According to plaintiff, defendants often failed to make timely payments, resulting in severe cash flow issues. Plaintiff, in turn, calculated interest on defendants' outstanding balances, which was billed to defendants as late fees on plaintiff's invoices. Despite occasionally paying those fees, defendants disputed their liability for them under either the SSA or the MSSA (hereinafter collectively referred to as the agreements). The parties did not resolve their payment disputes, and eventually defendants withdrew their work from plaintiff.
Plaintiff commenced this action in October 2017 alleging five causes of action for (1) account stated, (2) breach of contract, (3) breach of the implied duty of good faith and fair dealing, (4) quantum meruit/unjust enrichment and (5) fraudulent inducement. Plaintiff based its second cause of action for breach of contract on two theories: first, defendants failed to timely pay plaintiff's invoices, and, second, defendants failed to pay late fees. Following defendants' unsuccessful pre-answer motion to dismiss, issue was joined and discovery ensued. Defendants moved for partial summary judgment, which Supreme Court partially granted, dismissing as time-barred so much of plaintiff's breach of contract action as was based on untimely payments allegedly made before October 13, 2013, and so much of plaintiff's action alleging breaches of the implied duty of good faith and fair dealing occurring before October 13, 2015. The court also dismissed so much of plaintiff's breach of contract action as was based on defendants' failure to pay late fees, concluding that those fees were not contemplated by the agreements. Plaintiff appeals, and defendants cross appeal.[FN1]
Turning to plaintiff's appeal, a breach of contract cause of action "requires that the plaintiff show the existence of a contract, the performance of its obligations under the contract, the failure of the defendant to perform its obligations and damages resulting from the defendant's breach" (Daire v Sterling Ins. Co., 204 AD3d 1189, 1190 [3d Dept 2022] [internal quotation marks, brackets and citation omitted]; see Connors v Jannuzzo, 195 AD3d 1101, 1101 [[*2]3d Dept 2021]). The parties dispute whether the agreements confer an obligation on defendants to pay late fees. In this respect, whether the terms of a contract are ambiguous is a question of law for the court in the first instance, and the answer must be derived from within the four corners of the document (see Daire v Sterling Ins. Co., 204 AD3d at 1190-1191). Importantly, "an ambiguity never arises out of what was not written at all, but only out of what was written so blindly and imperfectly that its meaning is doubtful" (Donohue v Cuomo, 38 NY3d 1, 13 [2022] [internal quotation marks and citations omitted]). Indeed, "where a contract was negotiated between sophisticated, counseled business people negotiating at arm's length, courts should be especially reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include" (2138747 Ontario, Inc. v Samsung C & T Corp., 31 NY3d 372, 381 [2018] [internal quotation marks and citation omitted]; see Donohue v Cuomo, 38 NY3d at 12).
Applying these principles, Supreme Court correctly concluded that the terms of the agreements are clear, unambiguous and do not contemplate late fees. The agreements specify that charges to defendants are determined according to rate schedules attached to the agreements, and such rates include "all fees . . . , costs of operation, fringe benefits attributable to payroll, overhead, profit, social charges and all [n]on[-r]ecoverable taxes." Although the agreements afforded defendants a 2% discount for early payment, neither contained terms providing for the assessment of late fees, precluding plaintiff from claiming otherwise. As such, Supreme Court appropriately dismissed so much of defendants' second cause of action as was based on defendants' failure to pay late fees (see 2138747 Ontario, Inc. v Samsung C & T Corp., 31 NY3d at 381).
Next, plaintiff contends that Supreme Court erred in dismissing as time-barred so much of its breach of contract action as was based on claims accruing before October 13, 2013. The parties agree that plaintiff's breach of contract claims are governed by Texas' four-year statute of limitations (see Tex Civ Prac & Rem § 16.051; Stine v Stewart, 80 SW3d 586, 592 [Tex 2002]). Under Texas law, where an agreement contemplates fixed periodic payments for services, a breach of contract claim accrues each time a defendant misses a payment (see Davis Apparel v Gale-Sobel, a Div. of Angelica Corp., 117 SW3d 15, 18 [Tex Ct App 2003]). Where, however, an "agreement contemplates a continuing contract for performance, the limitations period usually does not commence until the contract is fully performed" (Trelltex, Inc. v Intecx, L.L.C., 494 SW3d 781, 786 [Tex Ct App 2016]).
Plaintiff points out that it kept performing under the agreements despite defendants' delinquency or nonpayment. Here, the agreements governed payments for services performed by plaintiff over periods of years and according to separate [*3]statements of work (hereinafter SOW) between plaintiff and defendants. According to the model SOW accompanying the agreements, each SOW would specify the objectives and due dates for the services contracted. Paragraph 1.1 of both agreements specifies that each SOW and the relevant agreement — the SSA or MSSA — comprise an integrated contract. Each integrated SOW and relevant agreement may be continuing in the vein of a construction contract (see Integrated of Amarillo, Inc. v Pinkston-Hollar Constr. Servs., Inc., 2013 WL 1324580, *3, 2013 Tex App LEXIS 4216, *8-9 [Tex Ct App Apr. 2, 2013, No. 07-11-0422-CV]), but the agreements on their own just set out the fixed schedule of invoicing and payment according to rates contained therein (see Hart v International Tel. & Tel. Corp., 546 SW2d 660, 662 [Tex Ct Civ App 1977]). As such, the agreements are not continuing contracts, and Supreme Court appropriately dismissed as untimely so much of plaintiff's second cause of action as was based on payments due before October 13, 2013.
Moving on to defendants' contentions, we first note that they did not timely perfect their cross appeal within six months of filing their notice of same, nor did they seek an extension of time to do so (see Rules of App Div, All Depts [22 NYCRR]
§ 1250.9 [a]). Unless granted an extension by this Court, "an appellant must perfect its appeal within six months of the date of the notice of appeal or the appeal will be deemed dismissed" (New York Mun. Power Agency v Town of Massena, 197 AD3d 83, 86 [3d Dept 2021]; see Rules of App Div, All Depts [22 NYCRR]
§§ 1250.9 [b]; 1250.10 [a]). Notably, plaintiff similarly failed to perfect its appeal, but this Court granted plaintiff's motion to vacate the automatic dismissal (see Rules of App Div, All Depts [22 NYCRR] § 1250.10 [c]), and it ultimately perfected by the new deadline. It appears that defendants were waiting for plaintiff to perfect. Yet, only when plaintiff perfected its appeal was it denominated the appellant-respondent. "Until such time as either party has perfected, the identity of a party as either an appellant-respondent or a respondent-appellant remains to be determined" (New York Mun. Power Agency v Town of Massena, 197 AD3d at 86). As defendants were not respondents-appellants until plaintiff perfected, they were required to maintain their position, either by applying for extensions or perfecting first (see id. at 86-87).
However, in November 2021 the parties did stipulate to a briefing schedule, and, although the stipulation was itself untimely, its existence indicates that the parties consulted and determined which of them would perfect first (see Rules of App Div, All Depts [22 NYCRR] § 1250.9 [f] [1] [i]; compare New York Mun. Power Agency v Town of Massena, 197 AD3d at 87). We therefore exercise our prerogative to "waive defendants' noncompliance and deem the cross appeal properly before us" (New York Mun. Power Agency v Town of Massena, 197 AD3d at 87).
Turning [*4]to the merits, defendants contend that Supreme Court erred in failing to dismiss plaintiff's third cause of action for breach of the implied covenant of good faith and fair dealing. Such covenant is implied in all contracts of this state and "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract" (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 153 [2002] [internal quotation marks and citations omitted]; accord Tompkins Fin. Corp. v John M. Floyd & Assoc., Inc., 144 AD3d 1252, 1257 [3d Dept 2016]). "This covenant encompasses any promises which a reasonable person in the position of the promisee would be justified in understanding were included" (Ochal v Television Tech. Corp., 26 AD3d 575, 576 [3d Dept 2006] [internal quotation marks and citations omitted], lv dismissed 7 NY3d 741 [2006]). "The duty of good faith and fair dealing, however, is not without limits, and no obligation can be implied that would be inconsistent with other terms of the contractual relationship" (Dalton v Educational Testing Serv., 87 NY2d 384, 389 [1995] [internal quotation marks and citation omitted]).
As an initial matter, plaintiff's breach of the implied covenant cause of action must be dismissed to the extent it duplicates its breach of contract claim seeking damages for defendants' purported failure to timely pay their invoices or pay late fees (see Shmaltz Brewing Co., LLC v Dog Cart Mgt. LLC, 202 AD3d 1349, 1353 [3d Dept 2022]; Catlyn & Derzee, Inc. v Amedore Land Devs., LLC, 166 AD3d 1137, 1140 [3d Dept 2018]). Furthermore, inasmuch as the agreements expressly reserved to defendants "the right to terminate [the agreements] or any [SOW] hereunder without liability at any time, with or without cause, upon [30] days written notice to [plaintiff]," defendants' withdrawal and reassignment of its work from plaintiff cannot constitute a breach of the implied covenant (see Cambridge Invs. LLC v Prophecy Asset Mgt., LP, 188 AD3d 521, 522 [1st Dept 2020], lv denied 37 NY3d 906 [2021]; Watermelons Plus, Inc. v New York City Dept. of Educ., 76 AD3d 973, 974 [2d Dept 2010]; see also Murphy v American Home Prods. Corp., 58 NY2d 293, 304 [1983]).
Defendants' proof on their motion consists of correspondence between them and plaintiff and spreadsheets created by plaintiff indicating that, as of October 2016, they had no outstanding balances aside from the disputed late fees. Accordingly, defendants have established prima facie entitlement to judgment as a matter of law as to plaintiff's third cause of action, shifting the burden to plaintiff to raise a triable issue of fact. Such proof consists of a lengthy affidavit from Deborah Clifton, plaintiff's former chief executive officer, and copies of emails and other correspondence. Clifton avers that defendants warned off other of plaintiff's clients based on cash flow problems, which were allegedly [*5]caused by defendants' failure to make timely payment. She also suggests that defendants facilitated an exodus of plaintiff's employees to its competitors. Construed in the light most favorable to plaintiff (see Roemer v Allstate Indem. Ins. Co., 163 AD3d 1324, 1325 [3d Dept 2018]), we conclude that triable issues of fact remain as to whether defendants breached the implied covenant by diverting clients and workers from plaintiff, thereby interfering with its ability to perform under the agreements (see Highbridge Dev. BR, LLC v Diamond Dev., LLC, 67 AD3d 1112, 1115 [3d Dept 2009]).
Defendants next assert that the limitation of liability clauses in both agreements preclude the award of consequential damages. Generally, "courts must honor contractual provisions that limit liability or damages because those provisions represent the parties' agreement on the allocation of the risk of economic loss in certain eventualities" (U.S. Bank N.A. v DLJ Mtge. Capital, Inc., 38 NY3d 169, 178 [2022] [internal quotation marks and citations omitted]). That said, public policy prohibits courts from enforcing exculpatory or nominal damages clauses to insulate parties from the consequences of their grossly negligent misconduct (see Matter of Part 60 Put-Back Litig., 36 NY3d 342, 352 [2020]; Sommer v Federal Signal Corp., 79 NY2d 540, 554 [1992]). Conduct rises to the level of gross negligence when it evinces a reckless disregard for the rights of others or intentional wrongdoing (see Kalisch-Jarcho, Inc. v City of New York, 58 NY2d 377, 385 [1983]).
Generally, "[i]n a breach of contract action, a plaintiff may recover general damages which are the natural and probable consequence of the breach, as well as consequential damages, which do not so directly flow from the breach" (Whitney Lane Holdings, LLC v Don Realty, LLC, 159 AD3d 1163, 1166 [3d Dept 2018] [internal quotation marks and citation omitted]). Here, the limitation clauses permit general damages but bar consequential and other damages: "In no event will [defendants] be liable to [plaintiff] for any special, indirect, or consequential damages (including but not limited to loss of profits) arising out of any performance of this agreement or in furtherance of the provisions or objectives of this agreement" (emphasis omitted) (compare Biotronik A.G. v Conor Medsystems Ireland, Ltd., 22 NY3d 799, 803 [2014]). Under the standard set forth above, the limitations clauses are enforceable and, as a result, plaintiff is precluded from recovering consequential damages (see Matter of Part 60 Put-Back Litig., 36 NY3d at 355; see also Biotronik A.G. v Conor Medsystems Ireland, Ltd., 22 NY3d at 805 n 4).
"General damages are the natural and probable consequence of the breach of a contract. . . . By contrast, consequential, or special, damages do not directly flow from the breach" (Biotronik A.G. v Conor Medsystems Ireland, Ltd., 22 NY3d at 805 [internal quotation marks and citations omitted]). In this regard, the nature [*6]of plaintiff's breach of contract claim for "damages must be evaluated within the context of the agreement[s]" (id.), each of which expressly contemplated timely payment within a defined time frame of 45 days under the SSA, reduced to 30 days under the MSSA. As such, we conclude that damages directly resulting from a delay in timely payment constitute general, not consequential damages (see id. at 805-807).[FN2] It follows that Supreme Court properly denied defendants' motion to dismiss this aspect of the second cause of action. Correspondingly, plaintiff would be entitled to recover general damages for bad faith conduct established under its third cause of action for breach of the covenant of good faith and fair dealing.
The parties' remaining contentions, to the extent not addressed above, are academic or meritless.
Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Plaintiff did not contest Supreme Court's dismissal of so much of the third cause of action alleging breach of the implied covenant of good faith and fair dealing as accrued before October 13, 2015, and we therefore deem that issue abandoned (see Prendergast v Swiencicky, 183 AD3d 945, 946 n 1 [3d Dept 2020], lv denied 36 NY3d 944 [2020]). Furthermore, plaintiff withdrew its first cause of action for account stated and did not oppose dismissal of its fourth cause of action for quantum meruit/unjust enrichment; the fifth cause of action for fraudulent inducement is not at issue.

Footnote 2: Although Supreme Court observed that defendants' counsel conceded during oral argument that "plaintiff would be entitled to interest accruing between the dates each payment was due and the dates each payment was made," we construe that colloquy as referring to potential statutory interest (see CPLR 5001). In any event, defendants maintained that they did not fail to timely pay properly submitted invoices, raising a question of fact as to whether a breach of contract occurred.