Zimmerman v Leatherstocking Coop. Ins. Co. (2024 NY Slip Op 02114)

Zimmerman v Leatherstocking Coop. Ins. Co.

2024 NY Slip Op 02114

Decided on April 18, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 18, 2024

CV-23-0362
[*1]Michael Zimmerman, Appellant,
v
Leatherstocking Cooperative Insurance Company, Respondent.

Calendar Date:February 20, 2024

Before:Garry, P.J., Egan Jr., Clark, Pritzker and Mackey, JJ.

David I. Aboulafia, Yorktown Heights, for appellant.
Kenney Shelton Liptak Nowak LLP, Jamesville (Daniel K. Cartwright of counsel), for respondent.

Egan Jr., J.
Appeal from an order of the Supreme Court (Richard A. Kupferman, J.), entered February 1, 2023 in Saratoga County, which, among other things, denied plaintiff's motion for partial summary judgment.
Plaintiff owned a home at 139 Grand Avenue in the City of Saratoga Springs, Saratoga County, and defendant issued a homeowners' insurance policy for the premises naming plaintiff as the insured. Plaintiff was in the process of selling the home when, on November 27, 2018, he left for an extended vacation in India. On January 2, 2019, a real estate broker arrived to show the empty home to a prospective buyer and found that there had been extensive water damage. Plaintiff notified defendant of the loss, and an ensuing investigation revealed that the water had come from a radiator pipe on the second floor that had frozen and burst. Defendant thereafter issued a January 22, 2019 letter disclaiming coverage because the residence was unoccupied at the time of the loss and plaintiff had failed, as required by the policy, to exercise reasonable care to either turn the water off or "maintain heat in the building" to prevent pipes from freezing during his absence.
Plaintiff commenced this action in August 2019, alleging that defendant had breached the insurance contract and seeking an award of damages. Following joinder of issue and discovery, plaintiff moved for partial summary judgment on the issue of liability, as well as summary judgment dismissing the affirmative defenses asserted by defendant. Defendant cross-moved for summary judgment dismissing the complaint. Supreme Court issued an order in which it, in relevant part, denied both motions. Plaintiff appeals, focusing upon the denial of that aspect of his motion seeking partial summary judgment on the issue of liability.[FN1]
We affirm. Plaintiff first argues that Supreme Court applied an incorrect standard in assessing his motion for partial summary judgment and that he is entitled to summary judgment under the proper standard. Plaintiff is correct that defendant, as the insurer seeking to rely upon an exclusion in the homeowners' insurance policy to avoid coverage, will bear the ultimate burden at trial "of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation" (Seaboard Sur. Co. v Gillette Co., 64 NY2d 304, 311 [1984] [internal citations omitted]). Plaintiff overlooks that, because "this appeal arises from a motion for summary judgment, the ultimate burden of proof [at] trial plays no part in the assessment of whether there are relevant factual issues presented" (Barra v Norfolk S. Ry. Co., 75 AD3d 821, 824 n 3 [3d Dept 2010]; see Bekkering v Christiana, 180 AD3d 1276, 1279 n 3 [3d Dept 2020]; Morley Maples, Inc. v Dryden Mut. Ins. Co., 130 AD3d 1413, 1413-1414 [3d Dept 2015]). In that context, it is the party seeking summary judgment who is required to "make a prima facie showing of entitlement to judgment as a matter [*2]of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; accord Jacobsen v New York City Health & Hosps. Corp., 22 NY3d 824, 833 [2014]). As such, notwithstanding plaintiff's efforts to argue otherwise, he was required to come forward with proof showing "that a loss occurred and that such loss was a covered event under the terms of the policy," which necessarily included proof "that no exclusion precluded coverage," to satisfy his initial burden upon his motion (Place v Preferred Mut. Ins. Co., 190 AD3d 1208, 1210 [3d Dept 2021] [internal quotation marks and citation omitted]). Supreme Court properly applied that standard.
As for the exclusion itself, the policy generally covered damage arising from frozen pipes, but excluded losses occurring "while the residence [was] vacant, unoccupied (including temporary absence) or . . . under construction and unoccupied." The policy added, however, that the exclusion did "not apply if [the insured had] used reasonable care to . . . maintain heat in the building or manufactured home; or . . . shut off the liquid supply and completely empty the system or domestic appliance." Plaintiff's contention that the "reasonable care" language was ambiguous and should therefore be construed against defendant is meritless. Although the policy at issue does not define the term "reasonable care," that phrase is commonly defined as "the care that an ordinarily reasonable and prudent person would use under the same or similar circumstances" (Merriam-Webster.com Dictionary, due care [https://www.merriam-webster.com/dictionary/due care]; see Merriam-Webster.com Dictionary, reasonable care [https://www.merriam-webster.com/dictionary/reasonable care] [cross-referencing definition of due care]; see also Black's Law Dictionary [11th ed 2019], care). "A contract is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion' " and, while the parties to the insurance contract here might reasonably disagree as to whether reasonable care was exercised under the facts of a particular case, there could be no reasonable dispute as to what standard was intended to be applied (Greenfield v Philles Records, 98 NY2d 562, 569 [2002], quoting Breed v Insurance Co. of N. Am., 46 NY2d 351, 355 [1978]; accord Falanga v Hillabrant, 208 AD3d 1308, 1311 [2d Dept 2022]; see Mount Vernon Fire Ins. Co. v Creative Hous., 88 NY2d 347, 352 [1996]; Place v Preferred Mut. Ins. Co., 190 AD3d at 1311; but see McAleavey v Chautauqua Patrons Ins. Co., 195 AD3d 1551, 1551-1552 [4th Dept 2021]). As a result, we view nothing ambiguous in the policy language.
We accordingly turn to the proof presented by plaintiff upon his motion. Plaintiff did not dispute that the home was unoccupied and that he had not shut [*3]off the water at the time the radiator pipe burst, leaving the question of whether he demonstrated a lack of material questions of fact regarding his use of reasonable care in maintaining heat in the residence during his absence. In that regard, plaintiff came forward with evidence suggesting that the home was insulated, that the heating system in the home was in working order and that all of the thermostats had been set to 55 degrees Fahrenheit or higher at the time he left for India, as well as that the heat was working on the several occasions that real estate brokers entered the home to show it to prospective buyers prior to January 2, 2019.
Plaintiff's motion papers also included evidence that cast doubt on some of those assertions, however, such as a letter from an engineer who inspected the residence on defendant's behalf and stated that his review of the relevant utility bills suggested that the gas boiler in the home had stopped working at some point prior to December 21, 2018.[FN2] More importantly, while plaintiff provided proof that his realtor had agreed, in general terms, to keep an eye on the house during the India trip, the motion papers also revealed significant dispute as to what that agreement actually entailed. Plaintiff testified that the realtor had agreed to stop by the house regularly and ensure, among other things, that the heat was still on and that there were no plumbing leaks. The realtor, in contrast, authored a letter in July 2019 explaining that he and his colleagues only "check[ed] on the general systems" of the house whenever they were there to show it to prospective buyers. The realtor then gave deposition testimony in which he made it clear that he was not a "house sitter[ ]" or a "caretaker" and that, aside from when he or his associates entered the house for showings, he had only agreed to periodically "drive by" the house as a favor to plaintiff and did not go inside. We agree with Supreme Court that, when viewed in the light most favorable to defendant as the nonmoving party, the foregoing evidence did not satisfy plaintiff's initial burden of showing the absence of questions of fact as to whether he employed "reasonable care to keep the home heated" while it was unoccupied (Place v Preferred Mut. Ins. Co., 190 AD3d at 1211; see Stephenson v Allstate Indem. Co., 160 AD3d 1274, 1275-1276 [3d Dept 2018], lv denied 32 NY3d 904 [2018]; compare McAleavey v Chautauqua Patrons Ins. Co., 195 AD3d at 1552 [homeowner repeatedly checked on residence during winter months, found no problems, then arranged for others to check its exterior while he was hospitalized]). Thus, Supreme Court properly denied plaintiff's motion without regard to the papers submitted in opposition (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]).
Garry, P.J., Clark, Pritzker and Mackey, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: Defendant cross-appealed from the order, but it appears that such was deemed dismissed when defendant failed to perfect the cross-appeal in a timely manner (see Rules of App Div, All Depts [22 NYCRR] §§ 1250.9 [a], [f]; 1250.10 [a]; New York Mun. Power Agency v Town of Massena, 197 AD3d 83, 86-87 [3d Dept 2021]). In any event, defendant has abandoned any arguments relevant to its cross-appeal by failing to advance them in its brief (see Matter of Clearview Ctr., Inc. v New York State Off. of the Medicaid Inspector Gen., 172 AD3d 1582, 1584 n 2 [3d Dept 2019]).

Footnote 2: The engineer also noted that the radiator pipe could have frozen before the heat went out because the radiator was near wooden windows where a frozen pipe would be common — implying that plaintiff may not have turned up the heat high enough to begin with — and an HVAC technician who determined that the boiler had stopped working because an electronic controller had failed made clear in his deposition testimony that the flooding itself could have caused that problem and that he did not know "whether [the boiler failure] came after the [water] damage or before."