Places in Saratoga, LLC v Izzo (2026 NY Slip Op 01100)

Places in Saratoga, LLC v Izzo

2026 NY Slip Op 01100

Decided on February 26, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 26, 2026

CV-24-1572
[*1]Places in Saratoga, LLC, Appellant,
vFrank J. Izzo et al., Respondents.

Calendar Date:January 9, 2026

Before:Clark, J.P., Pritzker, McShan, Powers and Corcoran, JJ.

Lemery Greisler, LLC, Albany (Javier J. Mendez of counsel), for appellant.
Cabaniss Casey LLP, Albany (John B. Casey of counsel), for respondents.

Clark, J.P.
Appeal from an order of the Supreme Court (Richard Kupferman, J.), entered August 22, 2024 in Saratoga County, which (1) denied plaintiff's motion for partial summary judgment, and (2) searched the record and granted partial summary judgment to defendants.
Plaintiff and defendants own adjoining parcels of property in the City of Saratoga Springs, Saratoga County. Defendants' parcel is improved by a two-story building. For over 100 years, plaintiff's parcel featured a two-story wooden barn located approximately 10 feet beyond the north wall of defendants' building. Attached to the barn's south wall was a single-story structure that connected to the north wall of defendants' building.
In 2018, plaintiff demolished the preexisting structures on its parcel in connection with a plan to build a three-story building. Before beginning work in furtherance of the project, plaintiff commenced a special proceeding under RPAPL 881 seeking a license to access several adjoining lots to perform excavation work, to relocate a drainage line and to relocate a sewer line servicing defendants' parcel. Defendants answered the petition and, as relevant here, raised a concern that plaintiff's design for its new building would render the north wall of their building inaccessible for repairs, representing that they may agree to allow plaintiff to relocate the sewer line benefitting their parcel, but only if plaintiff agreed to undertake remedial measures to protect the north wall of their building. Annexed to defendants' answer was a letter from an architect that they had retained to review the scope of the project, who also raised a concern about plaintiff's proposal to address storm water runoff from the roof of defendants' building, which slopes downward toward the shared boundary line with plaintiff's parcel.
In November 2018, the parties entered a stipulation of settlement resolving the RPAPL 881 proceeding as against defendants (hereinafter the stipulation). Under paragraph 6, before defendants would agree to abandon the sewer line easement benefitting their parcel, plaintiff was required to have a structural engineer inspect the north wall of defendants' building "to determine and opine [on] the measures . . . to be undertaken to appropriately protect th[e] wall" during the construction process. Paragraph 7 provided that, upon receipt of the structural engineer's report and prior to the commencement of construction, the parties "shall enter into discussions as to the nature [and] scope [of,] and [their] respective responsibili[ties] for," such protective measures, which would "necessarily include the design . . . and construction[,] at [plaintiff's] sole cost and expense[,] of a rainwater catchment system to receive runoff" from the roof of defendants' building and plaintiff's proposed new building. Paragraph 8 stated that, "[p]romptly after agreement upon and completion of the parties of their respective responsibilities [for] the protective measures, [defendants[*2]] shall execute an instrument . . . confirming termination [and] abandonment of any and all sewer and related utility easements" in favor of their property.
In accordance with the stipulation, plaintiff's structural engineer issued a report that recommended, among other things, structural repairs to the north wall of defendants' building prior to the commencement of construction. The report also raised a concern about potential water infiltration between defendants' building and plaintiff's proposed new building, explaining that the construction plans called for removing a preexisting roof gutter on the north wall of defendants' building even though roof drainage flowed toward plaintiff's new building from that direction and that "an alternate means of removing roof water" would be necessary. The report further warned that the projected height of plaintiff's new building would cause increased drifted snow buildup on the roof of defendants' building, which would require strengthening the existing roof or an alternative means of snow removal.
Upon receipt of the structural engineering report, the parties began discussions about a rainwater catchment system plaintiff was proposing to resolve the concerns about water runoff from defendants' roof. Defendants' architect, however, proposed a different solution. Despite negotiations in this regard, plaintiff's proposed system was never installed. Nevertheless, defendants executed a termination of easement agreement abandoning the sewer line easement benefitting their property, and plaintiff eventually began constructing its new building. At some point prior to or shortly after the commencement of construction, a gutter that ran along the north side of the roof of defendants' building was removed.[FN1]
In December 2019, defendants moved by order to show cause for settlement of the stipulation executed during the RPAPL 881 proceeding and an order compelling plaintiff to pay for improvements to their roof to eliminate the possibility of its collapse from increased snow load accumulations. In support of such relief, defendants emphasized the concern about increased snow accumulations on their roof as set forth in the structural engineering report, explaining that the parties had attempted to negotiate a solution but were at an impasse. Defendants further emphasized that plaintiff had proceeded with the construction of its building without addressing the increased snow load concerns, averring that this was contrary to paragraph 7 of the stipulation. Supreme Court (Crowell, J.) denied the motion in January 2020.
Plaintiff subsequently commenced this action alleging that water runoff from the roof of defendants' building was infiltrating its new building, causing damage to its property. The complaint set forth causes of action for breach of the implied covenant of good faith and fair dealing, promissory estoppel, nuisance, trespass and negligence, and sought money damages as well as a permanent injunction "barring[*3][defendants] from allowing any rainwater runoff" from the roof of their building onto plaintiff's property. Defendants joined issue and interposed various affirmative defenses, including that they had a prescriptive easement affording them "the right to discharge water . . . from [their] property on to plaintiff's property." Thereafter, plaintiff moved for partial summary judgment relative to its nuisance and trespass claims, which are premised upon defendants' alleged failure to address the water runoff from the roof of their building. Defendants opposed the motion, proffering, among other things, an expert affidavit in which a licensed engineer opined that "any water that may have penetrated [plaintiff's building] was from sources other than the roof of [defendants' building]" and stemmed from plaintiff's own actions. Finding that there were outstanding questions of fact as to the source of the water infiltration, Supreme Court denied plaintiff's motion.
A lengthy discovery period thereafter ensued, following which plaintiff filed another motion for partial summary judgment on its nuisance and trespass claims. Plaintiff's motion also sought summary judgment on liability relative to its causes of action for negligence and breach of the covenant of good faith and fair dealing, as well as dismissal of defendants' prescriptive easement affirmative defense. By decision and order entered August 22, 2024, Supreme Court (Kupferman, J.) denied plaintiff's motion for partial summary judgment and, after searching the record pursuant to CPLR 3212 (b), granted summary judgment in favor of defendants dismissing the causes of action alleging a breach of the covenant of good faith and fair dealing and promissory estoppel. As an initial procedural matter, the court declined to consider the merits of plaintiff's successive motion for summary judgment relative to its nuisance and trespass claims, finding that plaintiff "failed to demonstrate that any new facts" existed to warrant revisiting the prior order denying plaintiff's motion for summary judgment on the same causes of action. The court otherwise found that there were questions of fact as to whether defendants' actions or omissions were a proximate cause of the water infiltration at plaintiff's building, precluding judgment as a matter of law in plaintiff's favor on its claim for negligence, and that questions of fact also existed on defendants' prescriptive easement affirmative defense. As for its decision to search the record and grant partial summary judgment to defendants on two of plaintiff's claims, the court found that no "rational fact[f]inder" could find that defendants breached the covenant of good faith and fair dealing as it pertained to their conduct under the stipulation of settlement executed during the RPAPL 881 proceeding and that there were no genuine issues of material fact regarding plaintiff's promissory estoppel claim, compelling summary dismissal of both causes of action. Plaintiff appeals[*4].[FN2]
Initially, plaintiff argues that Supreme Court abused its discretion in declining to consider the merits of its successive motion for summary judgment relative to its nuisance and trespass claims. We disagree. " 'Generally, successive motions for summary judgment should not be entertained, absent a showing of newly discovered evidence or other sufficient cause' " (Consolidated Mtge., LLC v Westport Golf Invs., LLC, 141 AD3d 923, 925 [3d Dept 2016] [citations omitted], lv dismissed 28 NY3d 1102 [2016], quoting MLCFC 2007-9 ACR Master SPE, LLC v Camp Waubeeka, LLC, 123 AD3d 1269, 1271 [3d Dept 2014]; see Wells Fargo Bank, N.A. v Leonardo, 167 AD3d 814, 815 [2d Dept 2018], lv denied 34 NY3d 908 [2020]). Although additional discovery was conducted after plaintiff made its initial motion and plaintiff submitted additional evidence in support of its second motion, "evidence is not newly discovered simply because it was not submitted on the previous motion" (Vinar v Litman, 110 AD3d 867, 868 [2d Dept 2013] [internal quotation marks and citation omitted]). "Rather, the evidence that was not submitted in support of the previous summary judgment motion must be used to establish facts that were not available to the party at the time it made its initial motion for summary judgment and which could not have been established through alternative evidentiary means" (id. at 868-869 [citations omitted]; see Pavlovich v Zimmet, 50 AD3d 1364, 1365 [3d Dept 2008]). The additional evidence submitted by plaintiff in support of its second motion did not establish facts that were unavailable to it at the time of its initial motion, and plaintiff did not point to any newly discovered evidence warranting a reconsideration of the prior order denying its initial motion for judgment as a matter of law on its trespass and nuisance claims. Accordingly, Supreme Court providently exercised its discretion in declining to do so (see Consolidated Mtge., LLC v Westport Golf Invs., LLC, 141 AD3d at 925; MLCFC 2007-9 ACR Master SPE, LLC v Camp Waubeeka, LLC, 123 AD3d at 1271-1272; Vinar v Litman, 110 AD3d at 869; Pavlovich v Zimmet, 50 AD3d at 1365).
Supreme Court also properly denied plaintiff's motion for summary judgment on its negligence claim, which is premised upon an allegation that defendants breached a duty of care to maintain their property in a safe condition "by failing to install or maintain adequate drainage or take any sufficient preventative measures to control" the water runoff from their roof. Even assuming, without deciding, that plaintiff will be able to establish that defendants breached a duty of care owed to it in this regard, the expert affidavit defendants submitted in opposition to plaintiff's motion raises several outstanding questions of fact on the issue of causation, including, but not limited to, whether any negligent acts or omissions on defendants' part proximately caused the water infiltration problem at plaintiff's building, whether the issue is solely [*5]attributable to plaintiff's own negligent conduct and whether water runoff from defendants' roof is a source of the problem (see e.g. WFE Ventures, Inc. v GBD Lake Placid, LLC, 197 AD3d 824, 827 [3d Dept 2021]; Congregation B'nai Jehuda v Hiyee Realty Corp., 35 AD3d 311, 312 [1st Dept 2006]). Moreover, contrary to plaintiff's contention, Supreme Court also properly denied its motion for summary judgment dismissing defendants' prescriptive easement affirmative defense, as plaintiff did not adequately brief this issue in its motion papers and there are several outstanding questions of fact precluding judgment as a matter of law in plaintiff's favor (see Vacation Vil. Homeowners Assn., Inc. v Town of Fallsburg,233 AD3d 1196, 1201 [3d Dept 2024]; Barlow v Spaziani, 63 AD3d 1225, 1227 [3d Dept 2009]).
We do, however, agree with plaintiff that Supreme Court erred in searching the record and granting summary judgment to defendants dismissing the cause of action alleging a breach of the covenant of good faith and fair dealing relative to the 2018 stipulation. CPLR 3212 (b) "permits a court to search the record and grant summary judgment to a nonmoving party" on "a cause of action or issue that is the subject of the motions before the court" (Schillaci v Sarris, 122 AD3d 1085, 1088 [3d Dept 2014] [internal quotation marks and citation omitted]). However, "[s]ummary judgment is a drastic remedy" and should not be granted if there are genuine issues of material fact that remain outstanding (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]). "It is not the function of a court deciding a summary judgment motion to make credibility determinations or findings of fact, but rather to identify material triable issues of fact (or point to the lack thereof)" (Amici v Mazza, 234 AD3d 1170, 1172 [3d Dept 2025] [internal quotation marks and citations omitted], lv denied 44 NY3d 902 [2025]).
The covenant of good faith and fair dealing is implied in every contract and "is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement" (Fourth Branch Assoc. Mechanicville v Niagara Mohawk Power Corp., 235 AD2d 962, 965-966 [3d Dept 1997] [internal quotation marks and citations omitted]; see 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 153 [2002]; Van Amburgh v Boadle, 231 AD3d 187, 190 [3d Dept 2024]; Integrity Intl., Inc. v HP, Inc., 211 AD3d 1194, 1198 [3d Dept 2022]). When parties "enter into a binding contract under which the[ir] obligations . . . are conditioned on the negotiation of future agreements," the covenant of good faith and fair dealing requires such parties "to negotiate in good faith" (IDT Corp. v Tyco Group, S.A.R.L., 23 NY3d 497, 502-503 [2014]). However, "that obligation can come to an end without a breach by either party," as "[t]here is such a thing as a good faith impasse" (id. at [*6]503; see McGowan v Clarion Partners, LLC, 188 AD3d 497, 497-498 [1st Dept 2020], lv denied 37 NY3d 903 [2021]). Whether a party has negotiated in good faith "necessitates examination of a state of mind [and] is [generally] not an issue which is readily determinable on a motion for summary judgment" (Credit Suisse First Boston v Utrecht-America Fin. Co., 80 AD3d 485, 487 [1st Dept 2011] [internal quotation marks and citation omitted]).
Plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing is based upon an allegation that defendants have failed to negotiate in good faith under the terms of the stipulation executed during the RPAPL 881 proceeding because they are refusing to agree to plaintiff's proposed rainwater catchment system — which plaintiff has agreed to pay for at its sole cost and expense — unless plaintiff undertakes substantial repairs to defendants' roof to account for the increased snow load accumulations posed by the construction project. Under paragraph 7 of the stipulation, once the parties received the report of plaintiff's structural engineer, they were required to "enter into discussions" about the nature and scope of, as well as the parties' respective responsibilities for, the protective measures to be undertaken to protect defendants' north wall during the construction process. Such measures were to "necessarily include" the design and construction of a rainwater catchment system to receive runoff from the roof of defendants' building. The plain and unambiguous language of this paragraph therefore required the parties to engage in good faith negotiations about a rainwater catchment system, but it did not require a specific system to be utilized or for the parties to reach an agreement in that regard (see IDT Corp. v Tyco Group, S.A.R.L., 13 NY3d 209, 214 [2009]).
Here, the record reflects that, instead of refusing to entertain any solution to address the water runoff concerns from their roof, defendants worked with an architect to propose an alternative design for a rainwater catchment system after the architect raised concerns about plaintiff's proposal. The record further demonstrates that defendants continued to engage in discussions with plaintiff's representatives in that regard. At the same time, there is also evidence in the record tending to support plaintiff's claim that defendants' objection to plaintiff's proposal was based, at least in part, on plaintiff's failure to agree to reconstruct defendants' roof to protect against increased snow load accumulations. Although defendants had a founded concern about excess snow accumulations on their roof resulting from the height of plaintiff's new building, and the representations they made in support of their 2019 motion to compel reveal their belief that paragraph 7 of the stipulation required plaintiff to address this issue, the stipulation is silent as to any obligation by plaintiff in this regard and it is unclear whether this was [*7]a topic of the settlement discussions. Mindful that summary judgment is a drastic remedy, and regardless of whether plaintiff may ultimately prevail on its claim, there is a question of fact as to whether defendants are conditioning their assent to plaintiff's proposed rainwater catchment system on extracontractual demands and whether they have engaged in good faith negotiations in this regard (see Integrity Intl., Inc. v HP, Inc., 211 AD3d at 1199; Fonda v First Pioneer Farm Credit, ACA, 86 AD3d 693, 695 [3d Dept 2011]; Credit Suisse First Boston v Utrecht-America Fin. Co., 80 AD3d at 487). Thus, Supreme Court erred in searching the record and granting judgment as a matter of law in defendants' favor on the cause of action for breach of the implied covenant of good faith and fair dealing.
The parties' remaining contentions, to the extent not expressly addressed, have been considered and found lacking in merit.
Pritzker, McShan, Powers and Corcoran, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as searched the record and granted summary judgment to defendants dismissing the cause of action asserting a breach of the implied covenant of good faith and fair dealing; and, as so modified, affirmed.

Footnotes

Footnote 1: The parties dispute who removed the gutter.

Footnote 2: Plaintiff does not challenge Supreme Court's decision to search the record and grant summary judgment in defendants' favor dismissing the claim for promissory estoppel, thereby abandoning any argument in this regard (see Matter of Maidenbaum & Sternberg, LLP v New York State Dept. of Taxation & Fin., 243 AD3d 1054, 1056 [3d Dept 2025]).