Sabre Oxidation Tech., Inc. v Superior Plus Corp. (2026 NY Slip Op 01835)

Sabre Oxidation Tech., Inc. v Superior Plus Corp.

2026 NY Slip Op 01835

Decided on March 26, 2026

Appellate Division, Third Department

McShan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 26, 2026

CV-25-0476

[*1]Sabre Oxidation Technologies, Inc., et al., Respondents-Appellants,
vSuperior Plus Corp. et al., Defendants, and Sabre Holdco, LLC, Appellant-Respondent.

Calendar Date:January 9, 2026

Before: Clark, J.P., Pritzker, McShan, Powers and Corcoran, JJ.

Bradley, Arant, Boult, Cummings, LLP, Nashville, Tennessee (Roger G. Jones of counsel, admitted pro hac vice) and Wilson Elser Moskowitz Edelman & Dicker LLP, Albany (Peter A. Lauricella of counsel), for appellant-respondent.
The Mills Law Firm, LLP, Clifton Park (Christopher K. Mills of counsel), for respondents-appellants.

McShan, J.
Cross-appeals from an order of the Supreme Court (Richard Platkin, J.), entered January 10, 2025 in Albany County, which (1) denied a motion by defendant Sabre Holdco, LLC for summary judgment on its counterclaim, and (2) denied plaintiffs' cross-motion for, among other things, summary judgment dismissing the counterclaim.
This action arose from an unsuccessful asset-purchase transaction between plaintiffs and defendant Superior Plus Corp. (hereinafter Superior). Plaintiffs include a group of operating entities specializing in the generation and application of chlorine dioxide in various industries worldwide and the founder, CEO and chair of the companies. In September 2020, Superior executed a letter of intent (hereinafter the LOI) with plaintiffs which set forth general parameters for a rapid purchase of plaintiffs' assets through a new legal entity. As relevant here, section 8 of the LOI was a binding provision that required, among other things, plaintiffs to pay an expense reimbursement fee (hereinafter ERF) — i.e., the greater of Superior's expenses or $1 million — in the event the transaction did not occur within 45 days of the LOI, unless any such failure was due to Superior's material breach of the LOI. Section 8 also provided that plaintiffs' principals would be responsible for an Alternative Transaction Break Fee (hereinafter ATBF) in the event that they, in sum and substance, entered into a competing transaction or began voluntary or involuntary bankruptcy proceedings.[FN1]
Meanwhile, during the negotiation period with plaintiffs and unbeknownst to them, Superior was also negotiating the sale of ERCO Worldwide — its subsidiary whose primary business was the production of the chlorine dioxide precursors — to Birch Hill Equity Partners Management, Inc. Superior then entered into a letter of intent with Birch Hill in October 2020, outlining the terms of that sale, which subsequently occurred in early 2021 and was not disclosed to plaintiffs. Thereafter, in April 2021, as relevant here, Superior demanded payment of $1 million ERF provided in the LOI.[FN2] Shortly thereafter, Superior informed plaintiffs that it transferred the rights pursuant to the loan documents to defendant Sabre Holdco, LLC (hereinafter Holdco).
In June 2021, plaintiffs commenced this action against Superior, Superior Plus US Holdings, Inc. and Holdco, to recover damages for breach of contract, fraudulent inducement and conversion, as well as equitable relief requiring the return of assets wrongfully seized and a declaratory judgment determining that they were not required to pay the ERF. Plaintiffs filed an amended verified complaint in October 2021, alleging, among other things, that defendants failed to act in good faith in their efforts to complete the asset sale, and again requested preliminary and permanent injunctive relief as well as declaratory relief. In response to motion practice by the parties including defendants' cross-motion to dismiss the complaint, Supreme [*2]Court issued a decision that, among other things, dismissed plaintiffs' claims against Superior and Superior Holdings and left Holdco as the sole defendant on the only remaining claim — whether plaintiffs are obligated to pay the ERF. As relevant here, the court found that plaintiffs did not state a viable cause of action as to their breach of the implied covenant of good faith claim insofar as there is no duty of good faith in the formation of a contract. Shortly thereafter, Holdco filed an answer to the amended verified complaint with a counterclaim, stating that plaintiffs breached the LOI by refusing to pay the ERF.
Holdco subsequently moved for summary judgment on its counterclaim regarding its entitlement to the ERF and plaintiffs then cross-moved for summary judgment on their claim and dismissal of Holdco's counterclaim. In resolving the competing motions, Supreme Court found that plaintiffs breached the LOI by not paying the ERF but held that there were disputed questions of fact as to whether Superior materially breached its implied obligation of good faith and fair dealing. Therefore, the court found that neither party had established entitlement to summary judgment and denied the cross-motions. These cross-appeals ensued.
To begin, the respective parties both contend that Supreme Court improperly considered issues that had been previously resolved in prior rulings. Holdco contends that plaintiffs' defense that Superior breached an implied duty to negotiate in good faith toward the closing of the proposed transaction was previously determined by Supreme Court in its prior order that, in part, dismissed plaintiffs' cause of action predicated on that duty. Meanwhile, plaintiffs similarly contend that Supreme Court improperly decided that the language of section 8 was unambiguous. Plaintiffs contend that the question of ambiguity and the circumstances under which the ERF would be due were previously litigated and decided in their favor in the court's December 2021 decision. We find no merit to either contention.
Initially, although Holdco contends that Supreme Court's prior ruling is entitled to collateral estoppel effect, the argument it advances, like that of plaintiffs, is premised on "[t]he doctrine of law of the case," which "is a judicially crafted policy that expresses the practice of courts generally to refuse to reopen what has been decided" (Gulf Coast Bank & Trust Co. v Virgil Resort Funding Group, Inc., 201 AD3d 1086, 1088 [3d Dept 2022] [internal quotation marks and citations omitted], lvs denied 38 NY3d 909 [2022], 38 NY3d 909 [2022]; see Gitman v Martinez, 169 AD3d 1283, 1284 [3d Dept 2019]). "The doctrine is sometimes referred to as a kind of intra-action res judicata; its purpose is to avoid the retrial of issues already determined in the same case" (Brown v State of New York, 250 AD2d 314, 320 [3d Dept 1998] [internal quotation marks and citations omitted]; accord Barbero v CSX Transp., 244 AD3d 1649, 1652 [3d Dept 2025[*3]])."However, the doctrine applies only when the prior ruling directly passed upon a question of law that is essential to the determination of the matter" (Barbero v CSX Transp., 244 AD3d at 1652 [internal quotation marks, brackets and citation omitted]; see Scofield v Trustees of Union Coll., 288 AD2d 807, 808 [3d Dept 2001]; Brown v State of New York, 250 AD2d at 320).
We note that plaintiffs' cause of action for breach of good faith and fair dealing was predicated on numerous assertions with respect to what they deemed "necessary actions" in the LOI, several of which have no connection to the ERF.[FN3] The part of plaintiffs' cause of action that does relate to the ERF is predicated on the allegation that Superior and Holdco failed to negotiate in good faith toward a closing. On that, Supreme Court's decision on the motion to dismiss assessed the claim as a failure to adhere to an implied duty of good faith and fair dealing in failing to enter into a binding contractual agreement as contemplated by the LOI and potential damages that would flow from that specific failure (see generally Granger v Schachenmayr, 49 AD3d 1079, 1081 [3d Dept 2008]). That meaningfully differs from whether such a duty existed with respect to the binding provisions in the LOI, particularly those addressing plaintiffs' obligation to pay the ERF and their corresponding defense under the premise that Superior had materially breached its own obligations under the LOI (see generally Matter of Hoppenstein, 225 AD3d 489, 491 [1st Dept 2024], lv denied 43 NY3d 902 [2025]; Stroem v Plackis, 96 AD3d 1040, 1042 [2d Dept 2012]; D'Amato v Access Mfg., 305 AD2d 447, 448 [2d Dept 2003]). Accordingly, the law of the case doctrine did not preclude plaintiffs from raising such a defense in opposition to Holdco's motion for summary judgment.
As to plaintiffs' argument, although Supreme Court previously concluded "that the LOI appears to suffer from an ambiguity," that language fails to establish that it directly passed on that question in a way that would give it preclusive effect. Rather, the court's holding was "limited to determining whether plaintiff's allegations withstood a motion to dismiss" (Vestal v Pontillo, 183 AD3d 1146, 1148 [3d Dept 2020], lv denied 36 NY3d 907 [2021]). On that, we note that the doctrine is inapplicable "where, as here, a motion for summary judgment follows a motion to dismiss that was not converted to a motion for summary judgment pursuant to CPLR 3212 (c)" (Rosen v Mosby, 148 AD3d 1228, 1233 [3d Dept 2017], lv dismissed 30 NY3d 1037 [2017]; see Pogil v KPMG LLP, 228 AD3d 469, 470 [1st Dept 2024]; Riley v State of New York, 225 AD3d 1287, 1288 [4th Dept 2024]; Vestal v Pontillo, 183 AD3d at 1148; Santiago v Pyramid Crossgates Co., 294 AD2d 789, 790 [3d Dept 2002]). Accordingly, Supreme Court was not required to give preclusive effect to its prior determination on the potential ambiguity of the language with respect to the ERF.
Turning to the parties' arguments [*4]on the merits, we begin with the well-worn principle that "summary judgment[, which] deprives a litigant of their day in court, . . . is considered a drastic remedy which should only be employed when there is no doubt as to the absence of triable issues of fact. When considering a motion for summary judgment, courts must view the evidence in a light most favorable to the nonmoving party and accord that party the benefit of every reasonable inference from the record proof, without making any credibility determinations" (Sovocool v Cortland Regional Med. Ctr., 218 AD3d 947, 949 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; see Matter of McNeil, 233 AD3d 1231, 1233 [3d Dept 2024]).
We turn first to Supreme Court's determination in the order on appeal that the language in section 8 of the LOI is unambiguous. Plaintiffs argue that there is ambiguity in the provision because it is unclear when the ERF is due — after the 45 days as Holdco argues or only if a breach or default occurs as plaintiffs argue. "A contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion. Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent, or when specific language is susceptible of two reasonable interpretations. It is of course axiomatic that a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (Zollo v Adirondack Lodges Homeowners Assn., Inc., 225 AD3d 973, 975 [3d Dept 2024] [internal quotation marks and citations omitted]). Here, we find that the language of section 8 is clear and unambiguous.
To that end, there is no dispute from the language contained in section 8 of the LOI that Superior is the only party eligible for liquidated damages. The final paragraph refers to "damages accruing in connection with a Breach," which is defined by specific reference to actions that could only be undertaken by plaintiffs; specifically, the two actions that would trigger the ATBF, defined as "Primary Breaches," and the three occurrences that would trigger the ERF. Thus, the term "defaulting parties," and the ensuing obligation to pay the ERF or the ATBF falls squarely on plaintiffs. Reading section 8 as a whole, it is clear that a "Breach," as that term is defined, would trigger plaintiffs' duty to pay the ERF except, with respect to the clause at issue, if Superior materially breached its obligations under the LOI. That language is unambiguous and we need not look to parol evidence to clarify its meaning (see Stevens & Thompson Paper Co., Inc. v Niagara Mohawk Power Corp., 49 AD3d 1011, 1012-1013 [3d Dept 2008]). Accordingly, as there is no dispute that the parties did not complete the transaction within the 45-day period as agreed[*5], we turn to that question of a material breach as it pertains to the parties' respective motions for summary judgment.
"A material breach is a failure to do something that is so fundamental to a contract that the failure to perform that obligation defeats the essential purpose of the contract" (Feldmann v Scepter Group, Pte. Ltd., 185 AD3d 449, 450 [1st Dept 2020] [internal quotation marks and citation omitted]; accord SCE Envtl. Group, Inc. v Murnane Bldg. Contrs., Inc., 242 AD3d 1457, 1460 [3d Dept 2025]; see U.W. Marx, Inc. v Koko Contr., Inc., 124 AD3d 1121, 1122 [3d Dept 2015], lv denied 25 NY3d 904 [2015]). Plaintiffs argue that Superior breached section 9 of the LOI, the binding confidentiality provision, because it disclosed the existence of the LOI to Birch Hill and that such breach was material. First, we agree with Supreme Court that there are triable issues of fact with respect to that allegation. The clause at issue required that the terms and existence of the negotiations were to be maintained in the "strictest confidence" and could only be disclosed or used by the parties "solely in connection with negotiation of the [p]roposed [t]ransaction." The purported breach occurred as part of Superior's sale of ERCO to Birch Hill, the details of which were provided in the deposition testimony of Darren Hribar, Superior's vice president and chief legal officer. Hribar testified that at the time Superior was negotiating the LOI with plaintiff, Superior was also negotiating an LOI with Birch Hill for the sale of ERCO, and a final sale occurred in February 2021. Hribar also testified that he was aware that Superior had made Birch Hill aware of the transaction with plaintiffs, but did not have personal knowledge of when that occurred, believing that it followed the point in time when Superior had determined it was not proceeding with the transaction with plaintiffs.
However, on the materiality of a potential breach of that clause, we find that there is an issue of fact that is best left to the factfinder in this case (see WILJEFF, LLC v United Realty Mgt. Corp., 82 AD3d 1616, 1617 [4th Dept 2011]; see also CPLR 3212 [b]; see generally NY Professional Drywall of OC, Inc. v Rivergate Dev., LLC, 137 AD3d 1509, 1511 [3d Dept 2016]). "It is only where the evidence concerning the materiality is clear and substantially uncontradicted that the question is a matter of law for the court to decide" (Syracuse Orthopedic Specialists, P.C. v Hootnick, 42 AD3d 890, 892 [4th Dept 2007] [internal quotation marks and citation omitted]). The LOI notably contains only a few binding provisions, including the confidentiality provision, reflecting the premium that plaintiffs and Superior, as the drafter, placed on certain aspects of the LOI and the effect of negotiations. On that, the confidentiality provision, considered along with the exclusivity and public disclosure provisions, reflects the importance of the confidential nature of the negotiations and the importance [*6]placed on keeping any indication of it in "the strictest confidence." Hribar testified that the transaction was likely disclosed to Birch Hill as part of the ERCO sale, which, as noted by Supreme Court, "obviated Superior's need for Sabre." Hribar also noted that the disclosure of the LOI with plaintiffs would have been a necessary part of the Birch Hill transaction inasmuch as they would have had to exclude the bridge loan from ERCO's assets. That statement suggests the importance of confidentiality as the potential breach was seemingly necessary to proceed with the Birch Hill transaction. The affidavits of two of plaintiffs' principals further reflect as much, as they indicated that the requirement of confidentiality prevented them, in part, from seeking other offers for an asset purchase, which would be more attractive if Superior and ERCO's interest was publicly known. Further, the principals averred that Superior had insisted upon confidentiality, and stressed its importance, in order to shield knowledge of the transaction from other entities that were already seeking to purchase plaintiffs' assets. Thus, although confidentiality was not the purpose of the LOI, the breach of such a provision and the possibility that it so substantially frustrated the parties' goals of proceeding to a transaction raises questions as to materiality (see SCE Envtl. Group, Inc. v Murnane Bldg. Contrs., Inc., 242 AD3d at 1462-1463; see also Feldmann v Scepter Group, Pte. Ltd., 185 AD3d at 450; compare Bisk v Cooper Sq. Realty, Inc., 115 AD3d 419, 419 [1st Dept 2014]).
Plaintiffs also argue that Superior cannot enforce the ERF because it violated the implied duty of good faith and fair dealing, which constitutes a material breach. Conversely, Holdco contends, in sum and substance, that Supreme Court erred in denying its motion for summary judgment because there was no duty to negotiate the proposed transaction in good faith. Holdco, in essence, urges that it had no duty to continue advancing toward the transaction at all since the provisions within the LOI with respect to its ultimate goal are nonbinding and that imposing such a duty would be contrary to the language in the LOI. We disagree, as that reading would essentially ensure that Superior could not materially breach the agreement in any way. To that, in resolving the question of ambiguity surrounding section 8, Supreme Court correctly noted that the term "Breach," as defined in the LOI, speaks only to actions taken by plaintiffs. Accordingly, the term "material breach" is not encompassed therein and would be subject to its generally understood meaning.
Further, we reject the argument that the duty of good faith and fair dealing did not attach because the LOI was merely an agreement to agree in the future. "While the duties of good faith and fair dealing do not imply obligations inconsistent with other terms of the contractual relationship, they do encompass any promises which a reasonable person [as party [*7]to the contract] would be justified in understanding were included" (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 153 [2002] [internal quotation marks and citations omitted]). Thus, "[t]he covenant of good faith and fair dealing is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement" (ARB Upstate Communications LLC v R.J. Reuter, L.L.C., 93 AD3d 929, 934 [3d Dept 2012] [internal quotation marks and citations omitted]). "When parties enter into a binding contract under which their obligations are conditioned on the negotiation of future agreements, the covenant of good faith and fair dealing requires such parties to negotiate in good faith" (Places in Saratoga, LLC v Izzo, ___ AD3d ___, ___, 2026 NY Slip Op 01100, *5 [3d Dept 2026] [internal quotation marks, brackets, ellipsis and citation omitted]).
Holdco's position essentially ignores that the binding provisions of the LOI are critical to the resolution of this dispute (see generally Moshan v PMB, LLC, 141 AD3d 496, 496 [1st Dept 2016]; Bed Bath & Beyond Inc. v IBEX Constr., LLC, 52 AD3d 413, 414 [1st Dept 2008]; Hajdu-Nemeth v Zachariou, 309 AD2d 578, 578 [1st Dept 2003]; compare Buechner v Avery, 38 AD3d 443, 444 [1st Dept 2007]). In that respect, the 45-day provision that would trigger the ERF, coupled with the fact that section 13 of the LOI clearly permitted plaintiffs to withdraw from the LOI within the 45-day period after execution and without penalty, suggest that a failure to negotiate in good faith would have frustrated plaintiffs' ability to exercise that contractual right (see ARB Upstate Communications LLC v R.J. Reuter, L.L.C., 93 AD3d at 934; see also SCE Envtl. Group, Inc. v Murnane Bldg. Contrs., Inc., 242 AD3d at 1462). The testimony of Hribar suggests a triable issue of fact with respect to whether Superior made the determination that it was not proceeding with the transaction with plaintiffs during the 45-day period and gave no indication of same to plaintiffs at a time when they could have properly exercised their right to terminate and whether that breached the duty of good faith (see Places in Saratoga, LLC v Izzo, ___ AD3d at ___, 2026 NY Slip Op 01100, *6-7; Integrity Intl., Inc. v HP, Inc., 211 AD3d 1194, 1199-1200 [3d Dept 2022]; see generally Highbridge Dev. BR, LLC v Diamond Dev., LLC, 67 AD3d 1112, 1115 [3d Dept 2009]).
Finally, plaintiffs argue that by terminating the LOI, Superior forfeited the right to enforce the ERF. We disagree, as that would be contrary to the express language of section 8 which triggered plaintiffs' obligation to pay if, as relevant here, the contract did not close within 45 days and Superior did not materially breach its obligations. Plaintiffs' argument with respect to its entitlement to fees, predicated on their success on the ultimate merits, is therefore rendered [*8]academic in light of our determination. The parties' remaining contentions, to the extent not expressly addressed, have been considered and found without merit.
Clark, J.P., Pritzker, Powers and Corcoran, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: On the same day that the LOI was executed, plaintiffs also entered into a bridge loan agreement which entailed that Superior supply cash flow to plaintiffs pending completion of the asset-purchase transaction.
Footnote 2: Superior also declared plaintiffs in default of the bridge loan agreement and all related security agreements and demanded payment of the principal amount of the loan plus interest and costs.

Footnote 3: For instance, plaintiffs alleged that Superior, among other things, failed to properly fund an escrow account, release plaintiffs from an exclusivity period in the LOI and increased plaintiffs' debt through the bridge loan knowing that such debt could not be repaid.